UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AILENE RANDOLPH, )<br>    Plaintiff, )<br>) <br>vs. ) <br>) <br>LARUE D. CARTER MEMORIAL ) <br>HOSPITAL, )<br>    Defendant. ) | 1:08-cv-763-RLY-TAB |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Ailene Randolph ("Plaintiff"), is a former employee of LaRue D. Carter Memorial Hospital ("LaRue Carter"). Following her termination, Plaintiff filed the present lawsuit alleging gender discrimination, sexual harassment, and retaliation, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Defendant now moves for summary judgment. The court, having read and reviewed the supporting and opposing briefs, the designated evidence, and being otherwise duly advised, now **GRANTS** in part, and **DENIES** in part, Defendant's Motion.

**I.   Facts**

    **A.   Background**

1.    Plaintiff began work with LaRue Carter in August of 2005 as a housekeeper. Her hours were from 7:30 a.m. to 3:30 p.m. (Deposition of Ailene Randolph ("Plaintiff Dep.") at 11-12).

1

2. Plaintiff's responsibilities included cleaning and sanitizing the units that she was assigned to and reporting work orders to maintenance. (*Id.* at 19).

3. At all relevant times, Tyrone Davis ("Davis") and Raymond Gregory ("Gregory") were Plaintiff's supervisors. (Affidavit of Tyrone Davis ("Davis Aff.") ¶ 5; Affidavit of Alfreida Shelton ("Shelton Aff.") ¶ 4).

4. Davis and Gregory reported directly to Alfreida Shelton ("Shelton"), the Environmental Services Director. (Shelton Aff. ¶¶ 2, 4).

5. In August 2005, Davis went over all hospital policies with Plaintiff, including the overtime and tardiness policies. (Plaintiff Dep. at 88; Plaintiff Dep. Ex. 7). In addition, Plaintiff received informal housekeeping training from Shelton, Davis, and Gregory. (Plaintiff Dep. at 21).

6. On October 24, 2005, Plaintiff received a disciplinary notation in her personnel file, known as a "fact file" entry, for her unsatisfactory work performance. She was given formal housekeeping training the following day. (Plaintiff Dep. at 86; Plaintiff Dep. Ex. 7).

7. On November 10, 2005, Plaintiff received another fact file entry because she was thirty minutes late for the start of her shift. (Plaintiff Dep. at 88; Plaintiff Dep. Ex. 7).

    **B.    Inappropriate Co-Worker Comments**

8. Shortly after Plaintiff was hired, Plaintiff was invited by co-worker Art Gentry ("Gentry") to take her breaks in the men's locker room. Gentry informed her that

          other female co-workers used the room as a "general lounge."  Unlike the women's locker room, the men's locker room had a table and chairs.  (Plaintiff Dep. at 31-32).

9. Plaintiff testified that the only other female co-worker who used the men's locker room at the time that Plaintiff did was Dorcas Gentry.  She stopped using it as a break room a short time later because she did not like the way the men were talking.  (Plaintiff Dep. at 40-41).

10. Plaintiff eventually stopped using the men's locker room after a male co-worker named Mike Ward ("Ward") made a comment about her performing oral sex on Gentry.  Although Ward made the comment "in a very joking manner," Plaintiff became upset and left the room.  (Plaintiff Dep. at 42-43).

11. Plaintiff did not report this incident to Human Resources.  However, her relationship with her male co-workers became strained.  (Plaintiff Dep. at 43-44).

12. Sometime around this time period (the designated affidavits and depositions do not provide dates), Plaintiff spoke to Patricia Clift ("Clift"), Director of Human Resources, during the course of an investigation involving an allegation of sexual harassment against another female housekeeper.  Clift asked Plaintiff if she received any inappropriate comments from co-workers.  Plaintiff responded "yes." (Plaintiff Dep. at 50).  Plaintiff testified that she was "kind of leery about saying anything" because she was a new hire.  (*Id*. at 50-51).  Clift informed her that in the event such an incident should occur, she should report the incident to her.  (*Id*.

at 51).

13. Plaintiff testified that after the oral sex comment, Ward and other male co-workers said things to her, such as, "You need to comb your hair. You need to do this. All this kind of stuff. They thought it was a joke. I don't wear make-up to work. They said put on a little make-up." (Plaintiff Dep. at 46). Plaintiff also testified that "[t]here was comments some might take to be favorable comments. There was, Kevin would make a comment about my appearance. He would, he would ask for a date." (Plaintiff Dep. at 47).

14. In January or February 2006, Plaintiff complained of her co-workers' comments to Albert Jordan ("Jordan"), but does not recall exactly what was said. (*Id*. at 53, 63). Jordan informed her that he no longer had any responsibility within the affirmative action program, and that he needed to forward this information to Shelton, which he did. (Plaintiff Dep. at 53; Plaintiff's Ex. H; Declaration of Ailene Randolph ("Plaintiff Dec.") ¶ 8). In an email communication between Clift and Jordan dated May 16, 2006, Jordan confirmed that this conversation took place (as did several others), but noted that Plaintiff "never did express her specific complaint or name any specific person." (Plaintiff's Ex. H).

15. According to Plaintiff, Shelton was upset that Plaintiff made her initial complaints to Jordan. (Plaintiff Dep. at 53-54).

16. After speaking with Plaintiff, Shelton informed Plaintiff that she should not have been in the men's locker room to begin with, and that she would try to make the

women's locker room more hospitable. (Plaintiff Dep. at 54). She also advised Plaintiff's co-workers to apologize to her. (Shelton Aff. ¶ 11).

17. Plaintiff claims that after she spoke with Shelton, Shelton subjected her work performance to "heightened scrutiny." (Plaintiff Dep. at 54).

### C. Plaintiff's Job Performance and Complaints to Shelton and Clift

18. Plaintiff received numerous entries in her fact file between February and April 2006. For example, on February 2, 2006, Plaintiff received a fact file entry written by Shelton because she failed to secure her equipment. (Plaintiff Dep. at 89; Plaintiff Dep. Ex. 7). On March 9, 2006, Plaintiff received another fact file entry from Davis and Shelton because she ran over a patient's feet with her cleaning cart. (Plaintiff Dep. at 88-89; Plaintiff Dep. Ex. 7). Plaintiff denies any wrongdoing. (Affidavit of Ailene Randolph ("Plaintiff Aff.") ¶¶ 9, 10).

19. On March 22, 2006, Davis evaluated Plaintiff for her six-month working test. Davis found that she did not meet performance expectations. Both Davis and Shelton signed the evaluation form. (Plaintiff Dep. Ex. 9).

20. In the Comments Section of the evaluation form, Plaintiff "respectfully disagree[d]" with the assessment because it did not "reflect the integrity of [her] work." Plaintiff stated, among other things, that she received a "Good Housekeeping" award from a doctor, and that she demonstrated a willingness to be trained in various areas of her job. Plaintiff also stated that the "evaluation seem[s] to reflect the last month when there was a change in attitude due to

ongoing harassment." (Plaintiff Dep. Ex. 9) (emphasis in original).

21. At or about this time, Plaintiff was assigned to clean the lime scale off of a patient's bathroom walls. Plaintiff mixed chemicals and in the process, collapsed from the fumes. (Plaintiff Dep. at 25-27). Plaintiff and Shelton had to be taken to the hospital. (Shelton Aff. ¶ 5e).

22. On April 5, 2006, Plaintiff received another fact file entry from Davis and Shelton due to poor work performance. Plaintiff wrote at the end of the entry that she respectfully disagreed with that assessment. (Plaintiff Dep. Ex. 7).

23. The April 5, 2006, fact file entry prompted a letter of reprimand from Davis the following day. He wrote that Plaintiff "is receiving this written reprimand because of her second incident on [sic] poor work performance." (Plaintiff's Dep. Ex. 8). Plaintiff wrote on the letter that she wanted "to discuss [an] ongoing issue to grievance committee . . . ." (Plaintiff's Dep. Ex. 8; Plaintiff's Ex. A).

24. Sometime between February and April, Plaintiff met with Clift about Shelton's alleged change in attitude towards her. Clift set up a meeting that included Plaintiff, Davis, and Shelton. (Plaintiff Dep. at 56). At the meeting, Plaintiff expressed her concerns to Shelton and Davis. (Plaintiff Dep. at 57).

25. A staff meeting was held a short time later wherein Shelton stated that she did not want any of her housekeeping staff to go to human resources to voice a complaint. Rather, employees should voice their complaints to her and then she would decide whether it merited the involvement of the human resources department. (Plaintiff

Dep. at 58).

26. In early April 2006, Plaintiff testified that she complained once again to Shelton about the alleged harassment. (Plaintiff Dep. at 65). She also made a complaint to Clift at that time. (Affidavit of Patricia Clift ¶ 8).

27. On April 19, 20, and 21, 2006, Plaintiff received fact file entries from Shelton for, *inter alia*, not following directions and for flooding the office and the unit floor. (Plaintiff Dep. at 88; Plaintiff Dep. Ex. 7).

28. On April 21, 2006, Plaintiff was terminated for her "failure to meet job performance expectations." (Plaintiff Dep. at 95; Plaintiff Dep. Ex. 10).

29. On May 16, 2006, Clift sent Jordan an email asking him to give a specific statement regarding Plaintiff – i.e., what she told him in their conversations together. Jordan responded to Clift's email that day, and reported that Plaintiff came to him in tears saying that "she was concerned about someone in her department . . . who was saying mean and ugly things to her and about her. Most of her complaints were about her fears of losing her job if she did not go along with whatever the unnamed person expected of her." Jordan also noted that she came to him "several times after that, probably four or five times, and the conversation always centered on the same issue." (Plaintiff's Ex. H).

30. On May 18, 2006, Clift sent Jordan an email chastising Jordan for failing to inform her that Plaintiff "came to [him] repeatedly about a harassment problem that was not getting resolved." Clift also says, "I think that it was evident that [Shelton]

was not handling the problem since the employee kept coming back to you, all the more reason you should have gotten me involved." (*See* Plaintiff's Ex. I).

## II. Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003). The moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party may not, however, simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at 322)).

## III. Discussion

Plaintiff alleges that she was subjected to sexual harassment and was retaliated against for reporting the same. Plaintiff also alleges she was subjected to gender

discrimination. Plaintiff, however, failed to respond to LaRue Carter's motion with respect to her gender discrimination claim. As Plaintiff has presented no evidence or argument with respect to her gender discrimination claim, the court **GRANTS** LaRue Carter's motion on that claim. The court now turns its discussion to Plaintiff's claim of sexual harassment.

### A. Hostile Work Environment Sexual Harassment

In order to establish a hostile work environment on the basis of sex, a plaintiff must show that: (1) she was subjected to unwelcome harassment in the form of verbal or physical conduct of a sexual nature; (2) the harassment was based on the plaintiff's sex; (3) the harassment was severe or pervasive enough to create an abusive working environment; and (4) there is a basis for employer liability. *Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 903 (7th Cir. 2002); *see also Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007).

As the Seventh Circuit has noted, in order for a plaintiff to show a hostile work environment, the alleged harassment must be both subjectively and objectively hostile. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (internal quotation omitted). Moreover, "'[i]n determining whether the environment was objectively hostile, the court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work.'" *Id.*(quoting *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004)). "Indeed, the threshold for

9

plaintiffs is high, as the workplace that is actionable is one that is hellish." *Id.* (internal quotation and citation omitted); *see also Herron v. Daimler Chrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004) (finding that actionable harassment is that which subjects the employee to "multiple levels of workplace trauma."). Whether such an environment exists is a question of law. *Hardin v. S. C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999).

Plaintiff alleges that Ward made a comment about her performing oral sex on a co-worker. Plaintiff also alleges that other male co-workers made comments relating to her overall appearance, such as, "you should comb your hair" and "you should wear make-up." These comments, no matter how liberally interpreted, do not rise to the level of an objectively hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (internal citation and quotations omitted)). Indeed, only one comment was sex-based, and it was made only once in, as Plaintiff describes it, a "joking manner." Accordingly, the court **GRANTS** LaRue Carter's Motion for Summary Judgment on Plaintiff's hostile work environment claim.

**B.     Retaliation**

Plaintiff also alleges that LaRue Carter retaliated against her for her complaints of sexual harassment. Plaintiff proceeds under the direct method. Thus, Plaintiff must establish that: (1) she engaged in statutorily protected expression; (2) she suffered an

10

adverse employment action; and (3) there is a causal link between the protected expression and the adverse action. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008); *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007). The direct method allows a plaintiff to present circumstantial evidence of intentional retaliation "including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at the other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent may be drawn." *Boumehdi*, 489 F.3d at 792. The elements at issue are (1) and (3) above – i.e., whether Plaintiff engaged in protected expression and whether there is a causal link between that protected expression and her termination.

### 1. Protected Expression

LaRue Carter contends that Plaintiff did not engage in protected expression because she failed to follow the designated reporting procedure of making a written complaint and never advised her immediate supervisor at the time, Davis, of the alleged harassing comments by her co-workers.

Plaintiff admitted into evidence two sexual harassment policies. (Plaintiff's Exs. B, C). The policies provide that an employee "may" report the alleged harassment to a supervisor or human resources director, and that a written record is "needed to resolve a complaint of workplace harassment." (Plaintiff's Ex. B at 3; *see also* Plaintiff's Ex. C at 2).

The evidence, viewed in the light most favorable to Plaintiff, reflects that

Plaintiff's supervisors, Davis and Shelton, were put on notice of her complaints of workplace harassment. Plaintiff testified that she reported these incidents to Shelton approximately twice – in January or February and April 2006. (Plaintiff Dep. at 61; *see also* Plaintiff Dep. at 53-54, 56-57; Plaintiff Dec. ¶ 8). Plaintiff's testimony is supported by the May 18, 2006 email from Clift to Jordan, wherein Clift states, "I think that it was evident that [Shelton] was not handling the problem since the employee kept coming back to you [Jordan], all the more reason you should have gotten me involved." (Plaintiff's Ex. I). Moreover, in Plaintiff's March 22, 2006 evaluation, signed by Davis and Shelton, Plaintiff wrote that the negative evaluation seemed to reflect a change in attitude "due to ongoing harassment." (Plaintiff's Dep. Ex. 9). Further, Plaintiff informed both Davis and Shelton of her concerns at the meeting set up by the Human Resources Director, Clift, sometime between February and April. (Plaintiff Dep. at 56-57). From these facts, a reasonable juror could infer that Plaintiff reported the incidents to Davis and Shelton, and eventually Clift, months before her termination. The fact that she did not write down her grievances is not fatal to her claim, as her claim is one for retaliation and not sexual harassment. The court therefore finds a genuine issue of material fact exists as to whether Plaintiff adequately reported her complaints of sexual harassment to her supervisors and/or to human resources such that Plaintiff engaged in protected expression within the meaning of Title VII.

    **2.**    **Causal Connection**

LaRue Carter contends that Plaintiff cannot show a causal connection between her

termination and her protected expression because her work performance was substandard both before and after her reports of workplace harassment. The record evidence indicates that Plaintiff was given a fact file entry on October 24, 2005, for poor performance. In Plaintiff's defense, Plaintiff alleges that she was not given formal training when she commenced her employment, and only received formal training after her supervisors found her work performance to be subpar. (Plaintiff Dec. ¶ 4; Plaintiff Dep. at 65). In addition, the evidence, viewed in the light most favorable to Plaintiff, does support her claim that Shelton did exhibit heightened scrutiny of her work after she first reported her concerns to Shelton in February 2006. Indeed, the bulk of Plaintiff's fact file entries occurred between February and April 2006. While LaRue Carter relies upon the accuracy of those entries as proof of her poor performance, Plaintiff contests those fact file entries as valid assessments of her work performance. Only a jury of Plaintiff's peers can resolve that issue. Accordingly, the court finds that Plaintiff has raised a genuine issue of material fact as to whether her termination was in retaliation for reporting what she believed to be sexual harassment. The court therefore **DENIES** LaRue Carter's Motion for Summary Judgment on Plaintiff's retaliation claim.

### IV.  Conclusion

For the reasons set forth above, the court hereby **GRANTS** in part, and **DENIES** in part, Defendant's Motion for Summary Judgment (Docket # 28). Specifically, the court **GRANTS** Defendant's Motion with respect to Plaintiff's gender discrimination and

hostile work environment claims, and **DENIES** Defendant's Motion with respect to

Plaintiff's retaliation claim.


**SO ORDERED** this  6th   day of November 2009.


_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Electronic Copies to:

Laura Lee Bowker
OFFICE OF THE INDIANA ATTORNEY GENERAL
laura.bowker@atg.in.gov

Andrew Dutkanych III
BIESECKER & DUTKANYCH LLC
ad@bdlegal.com

Roy W. Harris Jr.
BIESECKER & DUTKANYCH LLC
rharris@bdlegal.com